1-2542 South Dakota, Governor Kristi Noem et al. v. Deb Haaland et al. Mr. Harris. Good afternoon, may it please the court. The fundamental flaw in the district court's and Applea's reasoning is to treat the 2021 permit application as though it were arising on a blank slate where the agency need only identify some rational basis for its action. But those arguments are wrong as a matter of both law and fact. The 2021 permit application followed immediately on the heels of a safe and successful 2020 event that was allowed to proceed only after NPS comprehensively studied all relevant environmental, tribal, and public health issues. Now, I can't say this any better than the April 2020 finding of no significant impact, which I think it's really important to underscore, is signed by the respondent, Herbert Frost. This is JA 153. In conclusion, as guided by this analysis, good science and scholarship, advice from subject matter experts, and others with relevant knowledge and expertise, consultation with tribes, and the results of public review and comment, it is the superintendent's professional judgment that there will be no impairment of park resources and values from implementation of the fireworks show. That finding of no significant impact continues. This conclusion is based on a consideration of the memorial's purpose and significance, a thorough analysis of the environmental impacts, potential mitigation measures, comments provided by the public and others, and the professional judgment of the decision maker. Now, when an agency changes its position, it always needs to acknowledge the change and offer good reasons for the new policy. And we don't think NPS even meets that standard. Let me ask you, counsel, before we get too far down the line, you said whether we're riding on a slate or what kind of slate we're riding on. Don't we have a new slate every year when it's a permit? And then every year in permitting, the government gives all kinds of permits, federal government does. Oh, my goodness, too many to... Isn't every year a new slate, a new season, a new whatever analogy you want to use? And so this case is absolutely moot in every regard. I respectfully disagree with that, Your Honor, for a couple of reasons. So first of all, we think if you look at page 26 of NPS's brief, they say there can be no meaningful dispute that the agency would reach the same result on reconsideration. So you essentially have the agency saying they don't plan to allow this no matter what the court says. So I think you have something that looks like a policy saying they're not going to allow this. Now, wait, you've applied again. Let me interrupt you. You've applied again this year. Your time for reconsideration has passed because of how the time frames ran in there. We can talk about how much of that is on you and how much on them. But is it just every year different? Your Honor, so the factors that NPS considers, this is in section 2.50 of the regs and section 1.6 of the regs. NPS is going to be considering the same factors every year. And in 2020, we have 100 pages of comprehensive... Well, I'm going to be even more blunt. The 4th of July passed. You hadn't done anything at that stage about involving us or involving anybody, right? You're referring to last year. You didn't even have a final judgment at that point, right? Well, Your Honor, so we, the state... No, I need a yes or no. I need a yes or no just so I know that I'm looking at my notes right. Yes or no to which question? On July 4, you didn't even have a final judgment, right? We did not, no. Right. So my goodness gracious. How can this not be moot? Your Honor, so the state absolutely is trying to do the right thing and was being very honest with the district court about, this is not an event we could just restart on a dime and do the next day. So we were candid with Judge Lange that we gave a date of June 2nd and said for the state's purposes, and I assume NPS would say something similar, we would need a certain amount of lead time. And Judge Lange acted very quickly. We briefed the preliminary injunction very quickly and he decided it on June 2nd, which we ourselves said was the last day. So I think we couldn't in good faith have come to this court and then said it. You became the Eighth Circuit. Oh, well. Well, I'm going to follow up because there's a case that really doesn't help you in terms of mootness that I'm positive nobody briefed this one. It was Poet Biorefining the EPA, 971F3802. It was a per curiam opinion. I was on the panel and it says, this is arbitrary and capricious review. We cannot order an administrative agency to grant an application that is no longer before it. It basically says what Judge Benton is saying, which is that application is long gone. They may give different reasons next year. And so we can't grant an application in 2020. I'd refer the court to, so I think there's an important difference between an injunction and a declaratory judgment. So I agree that at this point on the 2020 event, any injunctive relief is probably past us at this point. But the Biodiversity Legal Foundation case, which we cite 309F31175 in our reply, it cites Supreme Court precedent saying that you can always get declaratory relief if you're under the capable of repetition, but evading review box. And so I think what we fundamentally want from the court is an acknowledgement that the 2020, this comprehensive hundred page analysis informed by hundreds of pages of public comment can't just be brushed aside. And we think we have every reason to think again, if the agency is allowed to win on the merits and this court finds the case moot, it kind of writes the playbook for them to just deny the permit in the same five paragraph letter and just say, we're concerned about COVID, we're concerned about environment, we're concerned about wildfire. And then the state's going to be right back in the same position. And especially if they do it on the same timetable as last year, we're just going to end up in the same spot. So I think the best case we found at least on mootness is the Ubella-Hode case, the circuit from 2003. And in that case, it was about water releases. So the Army Corps was releasing water from dams during an annual fish spawning season. And there were some challengers to that. And this court held that this annual event, this fish spawning water release was sufficiently brief to not allow for full, meaningful judicial review. So we think that's exactly the sort of situation we're in, where it's an annual event. It's based on past permitting decisions in 2020. It was in June that the permit was issued. And again, the state has every interest in an orderly event. And we recognize that it's not something we can just pull together. And so we were very candid. Does the state plan to have this event in 2022? Your Honor, the state has already applied for it. It's cited in the reply brief where the permit is. And now, is that earlier than the state applied in this last cycle? I believe in the last cycle, the state applied even earlier in the fall. And then in fact, it's in the joint appendix. October, right, counsel? October. Yes. And then in fact, the emails are in the joint appendix. The state sent multiple follow-ups to NPS around the first of the year saying, do you need anything? What's the status of this? Can we give you anything? And then frankly got blindsided in March because after a highly safe and successful event that was only allowed to happen after studying all of the relevant concerns, the state had no reason to think that they were going to lose this. And so then the state engaged in some political advocacy through the governor and the senators and trying to get this fixed. And then we promptly brought suit when it was clear that that wasn't going to happen. And so I think as Judge Lange recognized in his opinion, the state acted with all due diligence once we knew. Counsel, I've got to interrupt you again. You mentioned, and you're right, that's the best case for you. But what about Abderrahman? Abderrahman, I bet it is. I bet you're aware of the or phrase there. An action does not evade review if the shortened duration results from failure to file suit sooner. What'd you wait? 50 days after the permit to file any suit, right? 50 days after the decision to file any suit, right? Okay. And then the next one is does not seek a state pending appeal. You certainly didn't do that, right? And then it says, or does not ask for expedited appeal. And they cite a lot of authority. We, this court cites a lot of authority and any one of those prongs can allegedly mean it doesn't evade review. So how do you get around that case and the three things that are in the alternative? It's not an and there, it's an or. Yes, your honor. And, and I just repeat again, the, so the whole preliminary injunction was fully briefed and I believe less than a month. And again, the, the preliminary injunction motion was pending before judge Lang. So again, I'm not sure what else we could have done to get to this court sooner. And, and, and we agree by the time June 50 days earlier, uh, you could have then, uh, seek the state pending appeal and you could have asked for an expedited appeal. Yes, your honor. I guess on the state pending appeal, it would, uh, we, again, we didn't even have an order from the district court. So I'm not sure what we, other than a mandamus or extraordinary writ, I'm not sure what we could have taken this court, but again, on Ubella Hode, I do think, and many of the cases that the government and the interveners site were earlier than Ubella Hode. And I think what, what the court recognizes there in 2003 is saying that in these exact sorts of administrative disputes, when, and even in an annual event, it's absolutely something that can recur. Um, and it's something where, um, a party can be severely prejudiced if they don't get meaningful judicial review. And again, I do want to underscore this is not just a one-off permit specific issue. The, the, the same factors are going to be considered by NPS every year. And we think, we think there was just an egregious administrative law failure here where after doing the work, finding the facts, doing the analysis NPS, just completely. And again, it's not the same agency. It's the same official. The respondent in this case signed the finding of no significant impact saying that the 2020 show could happen in a safe and eco and environmentally sound manner. Yet 11 months later, the same person, Herbert Frost signed a letter denying the permit on 180 degree about face on each of the issues that the finding of no significant impact, um, had addressed. So we think this is classic arbitrary, um, agency action. And again, and I think the state, we, we, we fear that if, if, if this court finds the case moot, that we're just going to end up in exactly the same situation. Um, especially if they don't even have any duty to wait, to, to, to wait until March, they could issue it much later. Um, and then again, we could end up in the same cycle of never actually being able to get a merits decision. Um, and I do want to underscore that we think the, the district court and the Appley is try to argue that these cases about administrative change of position. So Fox and Encino that they only apply to regulations or guidance documents or things like that, but by their own terms, those cases apply to changed factual findings. So this is just fundamental to the, to the agency's duty of reason decision-making that an agency cannot find facts and then sub silentio turn around and find the exact opposite. And we cite at page 37 of our opening brief and 17 of our reply brief, we cite numerous cases holding that facts, fact finding about the environmental impact of a program or policy squarely implicates this Fox and Encino, um, duty. Um, counsel, I want to ask you about the non-delegation principle, and I understand why you're not emphasizing it's probably preserved more for anything for us Supreme court review, but this is a weird case because if we were to give you the relief you seek on non-delegation, it would mean this, this power couldn't have been delegated, uh, by Congress, but it's not as if your client can go in and hold a fireworks display in the middle of a national park, right? So you need a permit for that. So if we strike down the delegation, you still can't get a permit, which means you can't fire off the fireworks. And so I whatsoever on the non-delegation argument. Yeah, we think it's the your honor. It's the, it's the fundamental amorphous ness of the standard. I think when you merely talk about promoting the values of the national park system, we just think there's not enough guidance and it turns into something that looks like essentially unchecked discretion. So whether that would mean that there would have to be better standards or different criteria, we just don't think we just don't. And especially again, given that we had a successful and safe show in 2020 and then faced the denial of the permit for the exact same show the next year. If those are the standards, we don't think there's any real content to those that give the agency adequate guidance. But if we strike down, if we strike down the delegation, I don't know what we would do, right? I don't know what you all would do. I can't figure out what that accomplishes because it just, then there's just no way to get, I guess you could ask the president or the Congress for a permit. I don't know what ended up happening there. And I was going to ask you that, that, that, yeah, I think you have to ask the president of the United States. And that's probably why we got to these two fireworks places, the way they are and the one, the one in DC and the one here and the one there. So, you know, we can be real here about what's going on, but, but you're into your rebuttals, so we need to stop filing it. And unless you want to proceed and use it now, of course. Thank you. You may reserve it. Okay. Mr. Springer. Good afternoon, your honors, and may it please the court. Brian Springer on behalf of the federal government. As has been discussed at length this afternoon, it's now over six months past the date on which the state proposed to hold a 10,000 person gathering for 4th of July at Mount Rushmore. The district court correctly indicated at JA 667 that plaintiff's arbitrary and capricious claim seeking a permit for that event is moot. Plaintiff's opening brief mentions mootness in a conclusory manner in the jurisdiction section, and their reply raises new contentions that still do not satisfy their burden to show a reasonable expectation that they will be subject to the same action again in the future. The national park services decision to deny a permit in this case was context specific and based on an assessment of the particular factual circumstances at the time. I think my colleague on the other side said that in general, the park service does consider a similar mix of factors each year. However, we know in this case in particular that the same factors will not influence the decision next year because the construction project that formed part of the 2021 decision is now complete and can no longer form part of a decision going forward. Plaintiffs primarily challenge here the sufficiency of the agency's explanation and therefore ask this court to issue an advisory opinion giving the agency advice about how to write future permit decisions. That's not an appropriate way to think about the case. We talk about their delay, but what about your delay? They applied late September, early October, and you don't do anything at all till when? May or June? Till March, your honor. Oh, March. Okay, that's a little better. When do you anticipate you'll have a decision about this year? Your honor, the agency is still taking this under consideration and looking at all the factors. There are a number of things that need to be considered and a number of people who need to be brought into the decision-making process, which is the reason that it took time the last time around to make a decision about whether the event could go forward. The agency needed to determine what the conditions were going to look like at the time that the event took place with respect to wildfire risk and perchlorate contamination, and that's part of the reason that there was a application and the decision that the agency actually made. I would just point as well to the tension between the state's own argument, because the state simultaneously criticizes the agency for not moving forward fast enough, but also says that the agency should have waited longer to see what COVID was going to look like and exactly what the circumstances were going to be in July when the event was proposed to take place. Well, let me ask you this. It seems like we're on a tight timeframe by its very nature, which is we've got at most a year, right? There's a year between each July 4th holiday. So if they want to do fireworks each year, we've got a year for the agency to figure this out. I'm a little worried that effectively, even if this is of inherently limited duration, that the agency could just run out the clock and kind of in like basketball and give an answer in June or May or March or whenever, and there's just no way we can get judicial review all the way through and that this cycle is going to keep repeating itself. What's your response to that? Your Honor, the agency is entitled to a presumption of regularity and it doesn't have the incentive to just delay in making the decision here, particularly when this is a partner, the state is its partner in a memorandum of agreement and the two of them have decided to try to hold these fireworks events to the extent that it can be done in a safe and responsible manner. And so the reason why we had to delay, as I mentioned, was just that there needed to be the internal consultation that happened in this process. A number of people needed to be consulted and as soon as the agency determined that it had enough information to decide whether this event could go forward in this safe and responsible manner, it issued its letter, in this case denying the permit. But won't that be true every year? You're going to have to have internal discussions, you're going to have to speak to people, you're going to have to do your environmental studies and that effectively we are in capable of repetition yet evading review land because you got to do your work. Your Honor, I still don't think that we are. I think that may go to the factor of whether this is evading review, but it doesn't go to the question of whether it's capable of repetition. Here, as I mentioned up front, this dispute is not, or at least the plaintiffs have not met their burden to show that this is factual circumstances. And I would just note as the colloquy, in the colloquy that happened before, that the state here could have taken significant steps to try to expedite the case. They could have brought suit earlier. They also could have appealed the PI decision immediately after it came out and instead they decided to wait and in the future could bring the case to this court if they wanted to try to seek Eighth Circuit review. Counsel, candidly, are you going to try to make March this year or not? You're here for the government, the agency. Your Honor, I don't want to get in front of the agency. The agency is currently looking over... You're their attorney, counsel. Don't weasel away. Tell me, are you going to try to make a March time or not? Your Honor, I'm not sure what the agency's timeline is. The agency still... Well, let me put it this way to you. As far as I'm concerned, if they come to me on some sort of stay and some kind of this kind of stuff, if you don't make it in a reasonable time next year, I'm going to put it on you in terms of the time frame. I'm just speaking for myself because you do get an incentive if it does go moot. You do get an incentive to say, oh, well, we'll just squeeze in a month or two every year and then we'll have these virtual conferences on a stay with you. So please relay that back to the agency since you're evading answering the question. Your Honor, I think the agency has the incentive to move forward as quickly as it can and will do its best to get its decision out as soon as it can. Okay. We'll watch. That certainly affects... Counsel, other than the COVID issue, what factor did the agency cite in its March 11th letter that there's going to be some delay in determining? Your Honor, I think it's... You've got the consideration of the tribes. You've got construction. You know what the state of construction is. Again, other than the COVID, what's the reason for waiting with respect to these other considerations? Your Honor, there are multiple management considerations that go on this decision. In addition, some of the factors that... Well, this isn't the first time. The event has taken place before, as I understand it. Your Honor, the only time that it has taken place at the state's behest was last year. From 1998 to 2009, it was an event that the park service itself held and did and set up in a way that made sense. You've got a lot of experience with this. Sounds like a little sidestepping going on with this. I don't see what the reason for delay is. Your Honor, as I mentioned, the agency will... I believe the agency has the incentive to move forward as quickly as it can and here... No, you don't. If you don't want it to happen, what's your incentive of moving forward? You just want to, as my colleague said, run out the clock, delay, and wait for another cycle to roll around. Your Honor, I don't think that the agency has that incentive. Again, this is the agency's partner who it's trying to work with to hold a safe event. I would also just note, in addition... Excuse me, Your Honor. I lost my train of thought. The agency has an incentive to move forward quickly here. The agency itself does not want to be involved in expedited litigation. The agency has an incentive to make this decision and allow the parties to think through the best way to hold this event to the extent it can be held in a safe and responsible manner. As I mentioned before, the agency's entitled to a presumption of regularity. We can't assume that there's a bad faith on the part of the agency that the state seems to attribute to the agency here. Your Honors, I would also just note, as I mentioned before, that again, although the mix of factors may be similar each year, we know that they will not be exactly the same. Many of the factors that were considered change over time, as we indicated in our brief. And as just a very poignant example of that, the construction project that formed part of the decision last year has now been complete and will no longer form part of the decision going forward. Your Honors, if there are no further questions, we would ask that the court affirm the district court's decision and leave time for my colleague too. Thank you, Mr. Springer. Ms. Ducheneau. Good afternoon, Your Honors, and may it please the court. My name is Nicole Ducheneau and I represent the Cheyenne River Sioux Tribe. My time is very short, so I will be as brief as I can. My argument is simple. The NPS has set forth very articulately a position that we share, but there is a factor that's relevant both to the capable of repetition issue and to the merits of the NPS's decision that justifies the NPS's denial of the state special use permit all by itself. And that's set forth on pages 29 and 30 of our brief. The NPS had not completed the mandatory process required by Section 106 of the National Historic Preservation Act. Those processes are required by federal law. They exist to ensure that federal action does not harm this nation's cultural properties and sacred sites. They in fact prohibit the NPS from granting this kind of permit until that process is complete. In the 2020 FONSI and tribal consultation process, the NPS committed itself to doing that tribal cultural property, traditional tribal property process before the 2020 event. They granted the permit without completing that process. When the NPS denied the permit in 2021, it properly did so because that process is not over. I never got a feeling from the briefing, what stage is it in? It sounds like it's in limbo here for two or three years. It's actually continuing apace, thank goodness. I'm talking about deadlines. When's it going to be done? Um, so I understand that they have identified a hundred new traditional properties. That was as of the time of the declaration submitted by Mr. Vance. I did have a message from Mr. Vance that they have had six meetings over this past year. They are past the identification phase and they are now in the adverse effects phase. And I am not aware of what the deadline is, but they have been diligent. These are issues related to our right to practice our religion and we are taking it very, very seriously. So there's not really a deadline to process? As far as, I believe there are deadlines. I am not, I have not been made aware and they were not available to us at the time of briefing. Oh, okay. But it is an important process. And as far as- Council, I'll just express or confess a lack of knowledge about this aspect, but how does that impact whether the permit should be issued or not? Well, the permit cannot be issued until the process has been completed. And as the denial letter- That's what I'm, that's my question. Why not? Well, because it's set forth in Title 54 of the U.S. Code Annotated and also in Title 36 of the Code of Federal Regulations. The U.S. District Court of the District of South Dakota discussed the process in the Lake Traverse Reservation, which is a 2016 case. The NHPA requires the Section 106 process before the issuance of a permit or license. So the 2020 permit was illegal, correct? Yes, it was, Your Honor. Okay, did you sue? We did not sue because- Did anybody sue? We did not sue until after July 3rd and at that point, our case was moved. Well, okay. Well, I won't pursue you on that. Okay. You heard the previous talk about it, so don't need to repeat it, but so you don't have any idea whether it'll affect the next one, this process or not? It'll be done by the next one. It will affect the process and from the perspective- Oh, no, no, I'm sorry. I didn't word my question well enough. Pardon me, Your Honor. Well, the deadline- No, I misworded it. Will the deadline be before the time that you need it to be done to do the next? Are we going to have every year that be the reason? Thank you, Your Honor. I certainly hope that it is. But one thing that's very important is the Ninth Circuit said in Pueblo of Sandia, the United States, 50 F 3856. It's not just that the process is complete, but also that it is done meaningfully and in good faith. And if it is not done meaningfully and in good faith, then a court like you would find it arbitrary and capricious. And so it is not within which they did in the Ninth Circuit. So it's not in the best interest of the NPS or anybody else to rush the process or to expedite it in a way that's not sensible. And as I said, I do understand that they are meaningfully working to resolve this because my client is very serious about those traditional cultural properties that are contained within the project area. Okay. Your Honor. And so thank you. As I said, the Black This NHPA doesn't entitle us to a decision. It just provides us with a process and that process is ongoing. We unfortunately don't have any control over it, although we would like it to continue quickly without getting through that process in a meaningful way and in good faith. The next permit cannot even be issued. And that is a good reason for the Biden administration, for the National Park Service to have denied that permit. We do not want a heckler's veto. We just want to see the process through and we believe that's what the court's decision did and what the denial did. So thank you, Your Honors. Thank you, Ms. Ducheneau. Okay, Mr. Harris, we're back to you. Thank you, Your Honor. Just two quick points in rebuttal. First, on your question of whether anyone had challenged the 2020 event, not only is the answer no, but Judge Lange expressly said and found in the preliminary injunction opinion that he thought the equities favored the state and essentially said that he would have denied a preliminary injunction if someone had challenged an event like this. Now, Judge Strauss, going back to your question about POET biorefining, which I pulled up during the interlude, the court seemed very concerned about the fact that it would be issuing an advisory opinion that wouldn't do anything for the parties there. That is absolutely not the case here. This is an ongoing annual process. The state intends to continue to seek these in the future, but NPS is on record before this court and the district court agreed, saying that they don't think that Encino and Fox, the this bedrock administrative law doctrine, they don't think that applies to them. And so without intervention from this court, they will have no reason to think otherwise. And they can continue to issue these bare bones, conclusory denials, and just ignore the hundred pages of environmental analysis that the state, as well as 700 public commenters very carefully put together in advance of the 2020 event. So we think all of these concerns about advisory opinions or opining about theoretical things, we have a very direct and discreet question of administrative law where we think there was a mistake below. The agency doesn't think it's bound by these doctrines, and we would respectfully submit that this court should. Counsel, what's your response to the statement made a couple of minutes ago that the traditional cultural properties survey will prevent this event and continues to prevent the event from taking place will continue to prevent the permit from being issued. Council says as a matter of law by regulation or even statute. I think we would disagree with that, your honor, the 2020 event that hadn't been done. And of course, many things in the park have been inventoried. And of course, the alleged threat, I want to be very clear, the alleged threat to many of the cultural or historical items would be from environmental or wildfire or other issues such as that, which, of course, we have 100 pages of careful analysis saying why those are not likely to be concerns. And so we don't believe we believe this event can be held in a safe and environmentally sound manner that wouldn't pose any risk to the park or the tribes. Okay, seeing no more questions, then thank you, counsel, for the argument. And case number 21-2542 is submitted.